**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X

In Re:                                                CHAPTER 13

Kim St. Clair.                                        Case No.: 08-27884 (MBK)


                         Debtor.
--------------------------------------------------------X

**APPEARANCES:**

Bruce M. Sattin, Esq.
Szaferman, Laknid, Blumstein & Blader, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
Attorney for the Moving Party, Thomas J. Keresztes

Keith D. Sklar, Esq.
Law Office of Sklar Smith-Sklar
1901 N. Olden Avenue, Suite 22
Ewing, New Jersey 08618
Attorney for Debtor, Kim St. Clair

**MICHAEL B. KAPLAN, U.S.B.J.**


                    **MEMORANDUM DECISION**

**I. INTRODUCTION**

        This matter comes before the Court upon the motion (the "Motion") of Thomas J.

Keresztes (the "Movant" or "Keresztes") for relief from the Automatic Stay pursuant to 11

U.S.C. § 362.   For the reasons which follow, the Court determines that Keresztes has

demonstrated cause for relief from the Automatic Stay and therefore grants Keresztes' Motion.

## II. PROCEDURAL HISTORY/FACTS

On January 28, 2004, Kim St. Clair (the "Debtor") and Keresztes were divorced by Final Judgment of Divorce (the "FJOD") entered by the Honorable Jane A. Grall, P.J.F.P.  The FJOD incorporated a Property Settlement Agreement (the "PSA") dated January 28, 2004.  Under the heading of Equitable Distribution, Paragraphs 4B and 4G of Article V of the PSA state that the Debtor and Keresztes agree to divide the Debtor's 401k retirement account and her Defined Pension Benefit Plan pursuant to a Qualified Domestic Relations Order ("QDRO").  Each party contends that the other was responsible for the failure to procure a valid QDRO during the seven year period after the entry of the FJOD.  Additionally, the Debtor asserts that Keresztes failed to honor his obligation to pay half of the cost for the procurement of the QDRO.

On September 18, 2008, the Debtor filed a Chapter 13 petition but did not name Keresztes as a creditor.  Debtor maintains that after the filing of the Chapter 13, she instructed her attorney to begin preparing the QDRO to be filed with the Superior Court of New Jersey, Chancery Division, Family Part.  On September 23, 2010, Keresztes' attorney received a letter from Debtor's bankruptcy counsel which contained a proposed QDRO.  Keresztes' attorney responded with a letter detailing suggested changes, specifically notifying the Debtor's attorney that two QDRO's were necessary for each of the Debtor's retirement plans.  No further response was sent from Debtor's attorney regarding the requested changes to the QDRO.  Keresztes' attorney sent a follow up letter inquiring as to the status of the QDRO, but again received no response.

Shortly thereafter, Keresztes contacted the Debtor directly to discuss the draft of the QDRO, to which she informed him that her attorney was gathering the requested information

sought in Keresztes' attorney's prior letters.  Debtor's attorney subsequently advised Keresztes' attorney in July of 2011 that he would no longer be pursuing the QDRO due to the possibility that the obligation might be dischargeable under the Debtor's Chapter 13 plan.  The Debtor now seeks to exempt both of her Pfizer retirement plans from the bankruptcy estate, and discharge any obligation owing Keresztes.

In response to the Debtor's position, Keresztes moved before this Court on October 5, 2011 requesting relief from the Automatic Stay to file an action to enforce the terms of the FJOD in the Chancery Division, Family Part.  Specifically, Keresztes seeks to compel equitable distribution of the Debtor's retirement plans through the QDRO's, determination of contribution toward college expenses and support for the two children, and verification of proof of life insurance coverage for the children's benefit.  Keresztes contends that pursuant to the terms of the FJOD, the Debtor has an obligation to hold Keresztes' entitlement in her retirement plans in constructive trust for his benefit.  In contrast, the Debtor contends that pursuant to the Employee Retirement Income Security Act ("ERISA"), Keresztes has no interest in her retirement plans due his failure to perfect a QDRO as of the date of the filing of the Chapter 13 petition.  Moreover, the Debtor asserts that laches applies to bar Keresztes from ever obtaining a portion of the Debtor's pension plans because he has waited seven years to request such relief.

Oral argument on the Motion was held on November 22, 2011.  At the conclusion of the hearing, the Court announced it would reserve its decision to further consider these issues.  After reviewing the parties' submissions and applicable law, the Court is prepared to rule.

## III. JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring

all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) & (G).   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408.   The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

## IV. DISCUSSION

### A.   Relief From Automatic Stay, Pursuant to 11 U.S.C. § 362(d)(1) is Appropriate

#### 1.   Standard for obtaining relief from the Automatic Stay under 11 U.S.C. § 362(d)(1)

Keresztes submits that he is entitled to relief from the Automatic Stay "for cause" under 11 U.S.C. §§ 362(d)(1); in this regard, he seeks to enforce the FJOD in the Chancery Division, Family Part with respect to his interests in the Debtor's retirement accounts, the parties' joint responsibility to contribute to their children's college expenses, and the Debtor's obligation to produce proof of life insurance coverage for their children.   The Automatic Stay is "one of the most fundamental debtor protections provided by the bankruptcy laws.   It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." Midlantic National Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494, 106 S. Ct. 755, 761, 88 L. Ed. 2d 859 (1986), quoting, S. Rep. No. 95-989, p. 54; H.R. Rep. No. 95-595, p. 340 (1977); U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840, 5963, 6296. 11 U.S.C. § 362(d) provides that the court shall grant relief from stay "for cause." 11 U.S.C. § 362(d); see also In re Wallace, 122 B.R. 222, 235 (Bankr. D.N.J. 1990). The Bankruptcy Code does not define "cause." See In re Wilson, 16 F.3d 87, 90 (3d Cir. 1997). Therefore, the determination to grant a party relief from the stay is made on a case-by-case basis.

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

In re Wilson, 16 F.3d at 90.  However, factors to consider in deciding whether "cause" has been

shown include: (i) prejudice to the debtor's estate, (ii) hardship to the moving party, and (iii)

probability of success on the merits. In re Nortel Networks Corp., 445 B.R. 370 (Bankr.D.Del

2011).

### 2.  Keresztes has demonstrated "cause" to lift the Automatic Stay

#### a.  Keresztes has a separate property interest in the Debtor's retirement plans

Keresztes contends that the Debtor has refused to effectuate the transfer of his equitable

interest in her retirement plans pursuant to the terms of the FJOD.  The Debtor takes the position

that the filing of her Chapter 13 bankruptcy extinguished her obligations to Keresztes under the

FJOD because Keresztes failed to perfect a QDRO before the petition date, as required by

ERISA. The Debtor argues that her obligation to turn over one half interests in her pensions to

Keresztes does not give rise to a constructive trust against the proceeds, but rather constitutes a

pre-petition claim for equitable distribution.  In a Chapter 7 proceeding, an equitable distribution

obligation is excepted from discharge under 11 U.S.C. § 523(a)(15).  In contrast, a Chapter 13

debtor can discharge such a debt.  Pertinently, § 1328(a) provides that upon completion of the

debtor's plan, the court shall grant the debtor a discharge of all the debts treated in the plan. In re

McGowan, 2011 Bankr. LEXIS 2292, at *11-12, FN3 (citing 11 U.S.C. § 1328(a)); however,

debts specified in § 523(a)(1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) are excluded from the

discharge. § 1328(a).  This section of the Bankruptcy Code makes no mention, however, of debts

which are included within the ambit of 11 U.S.C. § 523(a)(15).  Thus, any debts in the nature of

equitable distribution are subject to a Chapter 13 discharge under § 1328(a).  Therefore, if

Keresztes only has a pre-petition claim for equitable distribution, as the debtor contends, the

obligation would be dischargeable.  Notwithstanding, this Court must first determine whether the

obligation under the FJOD is a pre-petition "claim", subject to discharge, or whether Keresztes maintains a separate property interest in the pensions.

The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case". In re Lancaster Mortg. Bankers, LLC, 388 B.R. 106, 113 (Bankr. D.N.J. 2008); see also 11 U.S.C. § 541(d).  In determining whether the interest of a debtor in property becomes part of the bankruptcy estate, § 541(c) instructs the Court to look to nonbankruptcy law to determine the nature and extent of the debtor's interest in the property. In re Brockway Pressed Metals, Inc., 363 B.R. 431, 451-452 (Bankr.W.D. Pa. 2007).  Section 541(d) provides in pertinent part that "[p]roperty in which the debtor holds . . . only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." In re Day, 443 B.R. 338, 346, Fn 12 (Bankr. D.N.J. 2011); see also Bigelow v. Brown (In re Brown), 168 B.R. 331, 334-335 (Bankr. N.D. Ill. 1994) (finding that former spouse's rights in portion of debtor's pension plan vested upon the order of the divorce decree even though a valid QDRO had not been entered; the divorce decree awarded former spouse pension benefits that became her sole and separate property, with the post-pension QDRO serving simply to enforce her pre-petition property rights) (collecting cases).

A majority of courts deciding this particular issue have held that a "former spouse's interest in the debtor's pension becomes the sole and separate property of that spouse, not a debt, upon entry of a final judgment of divorce." In re Potter, 159 B.R. 672, 675 (Bankr. N.D.N.Y. 1993); see also In re McLaughlin, 2008 Bankr. LEXIS 645 (Bankr. D.N.J. 2008).  The determination of whether or not Keresztes' interest in the Debtor's retirement plans is a separate

property interest, and thus not included in the Debtor's bankruptcy estate, is decided by reference

to state law. In re Brown, 168 B.R. at 334-35.

Under New Jersey law, it "is well-settled that a pension earned during the marriage is an

asset subject to division." Barr v. Barr, 418 N.J. Super. 18, 33 (App.Div. 2011) (citing Kikkert v.

Kikkert, 88 N.J. 4, 5, 438 A.2d 317 (1981)).  Accordingly, ownership vests in the spouse to

whom property has been distributed upon entry of a judgment of divorce. See generally, Evans v.

Evans, 347 N.J. Super. 139, 142-143 (Ch.Div. 2001).  As New Jersey law is in accord with the

majority view among held by bankruptcy courts considering this issue, this Court joins in

holding that a former spouse's interest in a debtor's pension becomes the sole and separate

property of the non-debtor spouse upon entry of a final judgment of divorce. See In re

McLaughlin, 2008 Bankr. LEXIS 645, at *11-12.[2]  In so holding, this Court finds that the FJOD

entered into by the Debtor and Keresztes did not create a debtor/creditor relationship between

Kerestes and the Debtor. 168 B.R. at 334-35.  Instead, the terms of the FJOD reveal that the

Debtor only holds bare legal title in Keresztes' share of her retirement plans.  Therefore,

Keresztes retains his respective interest in the Debtor's retirement plans outside of the

bankruptcy estate. Id.

---

[2] Similar cases that have held that a former spouse's interest in a debtor's pension becomes the sole and separate
property of the non-debtor spouse upon entry of a final judgment of divorce are as follows: In re Resare, 154 B.R.
399, 401 (D.R.I. 1993) (declaring that the portion of the debtor's pension that was transferred in the divorce decree
was not considered part of bankruptcy estate); In re Zick, 123 B.R. 825, 829 (Bankr.E.D.Wis. 1990) (awarding ex-
wife a portion of pension fund which had been transferred in divorce settlement); In re Boyer, 104 B.R. 497, 499
(Bankr.S.D.Fla. 1989) (holding that funds awarded in divorce decree to non-debtor spouse were not property of
estate). In re Brown, 168 B.R. 331, 334-335 (Bankr. N.D. Ill. 1994); See e.g., Barnhill v. Johnson, U.S., 112 S. Ct.
1386, 118 L. Ed. 2d 39 (1992); Jones v. Atchison, 925 F.2d 209 (7th Cir. 1991), cert. denied, U.S., 112 S. Ct. 178,
116 L. Ed. 2d 140 (1991)); See also In re Potter, 159 Bankr. 672, 674 (Bankr.N.Y. 1993); see generally In re Byler,
160 Bankr. 178, 180 (Bankr.N.D.Okl. 1993); Matter of Newcomb, 151 Bankr. 287 (Bankr.M.D.Fla. 1993); In re
Long, 148 Bankr. 904 (Bankr.W.D.Mo. 1992) (interest of non-employee spouse in non-military pension is the sole
property of such spouse); In re Ledvinka, 144 Bankr. 188, 192 (Bankr.M.D.Ga. 1992); In re Farrow, 116 Bankr. 310
(Bankr.M.D.Ga. 1990); In re Benich, 811 F.2d 943, 945 (5th Cir. 1987); In re Chandler, 805 F.2d 555 (5th Cir.
1986) (monthly army retirement benefits awarded to wife pursuant to divorce decree were sole and separate property
of wife and did not become property of the debtor's estate); accord In re Beattie, 150 Bankr. 699, 701 (Bankr.S.D.Ill
1993).

**b. The Failure to Secure a QDRO Pre-Petition Has No Adverse Impact on Keresztes' Interests in Debtor's Retirement Plans.**

Moreover, the Debtor contends that ERISA expressly provides that the division of a pension can only occur pursuant to a duly executed QDRO. Keresztes, on the other hand, contends that upon entry of the FJOD, the Debtor had an obligation to hold his entitlement in her retirement plans in constructive trust so as to avoid unjust enrichment. This Court agrees with Keresztes' argument, that upon the entry of the FJOD, the Debtor had an obligation to hold Keresztes' entitlement in her retirement plans in constructive trust so as to avoid unjust enrichment, notwithstanding the failure to secure a QDRO. In the 2006 decision In re Trout, 2006 Bankr. LEXIS 4103, *9-10 (Bankr. D.N.J. Feb. 1, 2006), my colleague, Chief Judge Wizmur held that under New Jersey law, a constructive trust may be imposed when a debtor spouse retains possession of marital property awarded to the non-debtor ex-spouse by way of a judgment of divorce. In re Trout, 2006 Bankr. LEXIS 4103, at *9-10; see also In re Allen, 2011 Bankr. LEXIS 4736, 5-8 (Bankr. D.N.J. 2011). The creation of a constructive trust is "the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." 2006 Bankr. LEXIS 4103, at *9-10 (citing Carr v. Carr, 120 N.J. 336, 351, 576 A.2d 872 (1990)).

In Trout, the court acknowledged that the use of constructive trusts is not new concept in the context of divorce, equitable distribution, and bankruptcy. Id. In explaining its holding, the court referenced the case DeLauro, among other cases, where the husband and wife's final judgment of divorce transferred certain marital property from the husband to the wife. In re Trout, 2006 Bankr. LEXIS 4103, at *9-10. (citing DeLauro, 207 B.R. at 413). However, before the transfer of property occurred, the husband filed for bankruptcy. 2006 Bankr. LEXIS 4103, at

8

*9-10 (citing Id. at 414).  The court held that under § 541(d) of the bankruptcy code, the marital property to be transferred was not property of the estate because the debtor only held bare legal title to the property at the time he filed his bankruptcy petition.  Id. (citing Id. at 416).  Accordingly, the court held that the property was secured by way of constructive trust, which was formed at the time the final judgment of divorce was executed.  Id. (citing Id.).

As was the case in DeLauro, the parties in Trout entered into a judgment of divorce providing for the equitable distribution of funds to the non-debtor's spouse prior to the debtor's bankruptcy filing.  Id.  Judge Wizmur concluded that at the time of the entry of the final judgment of divorce, the debtor held nothing more than bare legal title for his ex-wife.  Id.  Thus, the court held that equity demanded the imposition of a constructive trust "to protect the wife's interest and to prevent the unjust enrichment of the debtor."  Id.; see also In re Allen, 2011 Bankr. LEXIS 4736, at 5-8 (Under § 541(d), property held in constructive trust for another is not property of the estate.  Court held that non-debtor spouse's right to receive payments from the debtor's retirement plan was not a claim against the debtor's estate.)

For the reasons set forth in Trout, and the other factually similar cases cited, this court finds that while the Debtor currently retains legal ownership of her retirement plans, Keresztes retains equitable interests as separate property from that of the Debtor's interests pursuant to the terms of the FJOD.  Trout, 2006 Bankr. LEXIS 4103, at *9-10; see also In re Brown, 168 B.R. at 334-35.  As a result, the Debtor holds Keresztes' equitable interest as a constructive trustee for the benefit of Keresztes.  Id.   In other words, the entry of the FJOD, caused Keresztes' equitable interests in the Debtor's retirement plans to vest in Keresztes, leaving the Debtor with only bare legal ownership of the plans.   As such, the Debtor has an obligation to hold Keresztes' equitable interest in her retirement plans in constructive trust.

Certain issues raised by the Debtor's argument against the imposition of a constructive trust presents some interesting points that merit further analysis, and sets this matter apart from Trout.  Unlike in Trout, the Debtor here contends that the formation of constructive trust for the benefit of Keresztes is not warranted because ERISA expressly provides that the division of a pension can only occur pursuant to a QDRO.[3]  As such, the Debtor maintains that Keresztes' failure to file an executed QDRO with the Family court before the filing of the within Chapter 13 petition granted her unfettered rights to all the funds in her pension accounts.  There is limited case law in support for Debtor's theory.  See e.g. King v. King (In re King), 214 B.R. 69 (Bankr. D. Conn. 1997).  In King, the court determined that a non-debtor spouse's awarded share in debtor's ERISA qualified pension funds was a dischargeable debt since the absence of a valid QDRO prior to the bankruptcy filing precluded any conveyance made by the state court decree; thus, the King court did not view the non-debtor spouse as having an independent interest in the pension funds. King, 214 B.R. at 79.  The King decision represents, however, a minority view.

In 1984, Congress enacted the Retirement Equity Act (REA) which created a limited exception to ERISA preemption, permitting the division of pension plan benefits pursuant to state law where a QDRO was filed. Ross v. Ross, 308 N.J. Super. 132, 150-151 (App.Div. 1998) (citing 29 U.S.C.A. § 1144(b)(7)). As a result, ERISA preempts all marital dissolution decrees that do not satisfy the statutory definition of a QDRO with respect to pension plans. Ross, 308 N.J. Super. at 150-51.  "Thus, state law will prevail only where pension plan benefits are alienated pursuant to a valid QDRO. If no QDRO exists, ERISA and federal common law must be applied to determine whether the benefits were properly alienated." 308 N.J. Super. at 150-51. The QDRO must be viewed as a vehicle to allow the alienation of an interest in an ERISA qualified plan.  The absence of a QDRO does not, however, vitiate such an interest.  The

---

[3] The parties agree that there was no enforceable QDRO executed prior to the filing of the Debtor's bankruptcy.

execution of a QDRO merely enforces preexisting property rights in a pension. <u>See</u> <u>In re Brown</u>, 168 B.R. at 334-35.

In the case <u>Gendreau v. Gendreau (In re Gendreau)</u>, 122 F.3d 815 (9th Cir. 1997), at issue was whether the debtor's bankruptcy petition foreclosed the non-debtor spouse's rights in a portion of the debtor's pension proceeds that were awarded to the non-debtor spouse through the divorce judgment. <u>Gendreau,</u> 122 F.3d at 817.   As noted by the 9th Circuit, ERISA was promulgated to protect participants in private employee benefit plans and strictly prohibits the assignment or alienation of pension benefits. 122 F.3d at 817 (citing 29 U.S.C. §§ 10012 & 1056(d)).   However, Congress expressly exempted QDROs from ERISA's anti-alienation rule, but required that domestic relation orders meet certain requirements in order to qualify as QDROs. <u>Id.</u> (citing 29 U.S.C. § 1056(d)(3)(A) & (B)).   Accordingly, the QDRO exception was enacted to provide financial security for Divorcees. <u>Id.</u> (citing <u>Ablamis v. Roper</u>, 937 F.2d 1450, 1453 (9th Cir. 1991)).   Due to concerns over reducing the expense to plan providers and providing them protection from law suits for making improper payments, Congress also required QDROs to be specific and clear and granted plan administrators the authority to approve a QDRO before having to adhere to its provisions. <u>Id.</u>

The debtor in <u>Gendreau</u> argued that ERISA's anti-alienation rules precluded the non-debtor spouse from having an interest in the debtor's pension plans without a QDRO, which the non-debtor spouse did not have according to the plan administrator. <u>Gendreau,</u> 122 F.3d at 818. As a result, the debtor contended that non-debtor spouse merely possessed a right to obtain a QDRO and payment, satisfying the definition of a debt under the bankruptcy code. <u>Id.</u>   The 9th Circuit disagreed, instead adopting the position of the Bankruptcy Appellate Panel, that the Family Court's order, at the very least, gave the non-debtor spouse a right to obtain a proper

QDRO that could not be discharged in the debtor's bankruptcy. Id.  As such, the non-debtor spouse's interest in the debtor's pension plans was fixed under state law at the time of the divorce decree, with the Debtor's interest in the plan being subject to limitation at such time the non-debtor spouse obtained a QDRO. Id.

Acknowledging that bankruptcy recognizes state property rights, the 9th Circuit held that "filing bankruptcy cannot give a debtor a greater interest in an asset than that which he owned pre-bankruptcy." Id. at 818-19.  The court expanded upon this, stating that the QDRO provisions of ERISA did not suggest that that the non-debtor spouse had no interest in the debtor's pension plans until the non-debtor spouse executed a QDRO, rather they "merely prevent[ed] her from enforcing her interest until the QDRO . . . [was] obtained." Id. at 819.  Consequently, the debtor did not file bankruptcy before the non-debtor spouse had acquired an interest in the pension plans, but did file before the plan administrator was authorized under ERISA to take any action to pay the non-debtor spouse according to her interest. Id.  Therefore, the court held that the non-debtor spouse did not have a pre-petition debt against the debtor that was dischargeable in bankruptcy; rather, the non-debtor spouse had a claim to her interest in the debtor's pension plans that would become enforceable upon the domestic relations order being approved as a QDRO. Id.  In so holding, the court noted that permitting the debtor to exclude the non-debtor's interest in the pension plans based upon the timing of the debtor's bankruptcy petition "would be contrary to both ERISA and bankruptcy purposes." Id.

A similar result was reached by a 10th Circuit Bankruptcy Appellate Panel in In re Carbaugh, 278 R.R. 512 (10th Cir. B.A.P. 2002), which refused to follow the minority approach espoused in King, supra and held that even in the absence of a QDRO, a non-debtor claimant has an identifiable interest in an ERISA qualified pension plan that will not be discharged in

bankruptcy. Carbaugh, 278 B.R. at 526 (While the divorce decree did not give the claimant a direct unqualified right to proceed against the plans, it did provide the non-debtor spouse with an interests in the same that correspondingly circumscribed the debtor's interest.)

Consistent with the decisions in Gendreau and Carbaugh, this Court finds that it is irrelevant to the outcome of this motion whether or not a QDRO was executed by the parties before the filing of the bankruptcy, especially with respect to whether Keresztes' interests in the Debtor's retirement plans are part of the bankruptcy estate and whether the Debtor holds said interest in constructive trust.  In saying this, the perfection of a QDRO will only become an issue for either party when the Debtor's retirement plans mature and Keresztes seeks to compel the distribution of his one-half interests.

In the case at bar, and as stated previously in this opinion, the Debtor has at best a bare legal title in Keresztes' entitlement in the Debtor's retirement plans.  Accordingly, the entry of the FJOD vested Keresztes' with the equitable right to his one-half interest in the Debtor's retirement plans. In re Trout, 2006 Bankr. LEXIS 4103, at *9-10; see also In re Brown, 168 B.R. at 334-35.  Hence, under New Jersey law, Keresztes did not need to take any further steps to perfect his equitable interest in the Debtor's retirement plans. 2006 Bankr. LEXIS 4103, at *9-10; see also See, Szyszko v. Szyszko, 2001 U.S. Dist. LEXIS 9527, 4-6 (N.D. Ill. July 5, 2001) ("Property interests are created and defined by state law."). As noted, a QDRO is merely the vehicle in which preexisting property rights are enforced. In re Brown, 168 B.R. at 334-35 ("In fact, upon entry of the divorce judgment, the benefits became the sole and separate property of the Plaintiff. Potter, 159 Bankr. at 674. The QDRO merely served to enforce her preexisting property rights in the pension."). As a result, the provisions of ERISA do not impact this motion, nor is there other federal law that preempts New Jersey matrimonial law with respect to real

13

property.  Therefore, the Court determines that under New Jersey law, Keresztes' interest in the

Debtor's retirement plans vested at the time the executed FOJD was entered by Judge Grall in

the Chancery Division, Family Part.

Interestingly enough, because Keresztes' equitable interest in the Debtor's retirement

plans was neither property of the Debtor nor property of the bankruptcy estate, Keresztes would

not have violated the automatic stay had he chosen to pursue the remedies without leave of this

Court. In re Brown, 168 B.R. at 336 (citing see 11 U.S.C. §§ 541(d), 362(a)).  The automatic stay

serves only to protect property in which either the debtor or the estate has an interest. 168 B.R. at

336 (citing see 11 U.S.C. § 362(a)).  As already held, Keresztes is not a creditor of the Debtor's

estate, and his interests in the pension plans are separate and apart from the interests of either the

debtor of the estate.  Accordingly, it is unlikely that Keresztes' post-petition pursuit of his rights

against the Debtor's retirement plans would have violated the automatic stay.  For these reasons,

the Court could deny Keresztes' motion as moot; however, the Court pauses to acknowledge that

an order granting stay relief and providing clarification may be appropriate in certain instances to

assist the parties and the Family court.  Therefore, so as to avoid any confusion that may occur in

the Family court without an appropriate order, this Court instead will grant Keresztes' motion for

stay relief permitting him to affirmatively pursue his rights with respect to the Debtor's

retirement plans and the FJOD.

With regards to the Debtor's asserted laches defense, and the manner in which it may

affect the relief Keresztes seeks, the Court believes that the state court is often better suited to

determine family law matters—as is this case here—because of its established expertise in this

area of the law. In re McGowan, 2011 Bankr. LEXIS 2292 (Bankr. D.N.J. June 15, 2011) (citing

see In re Persley, 2008 WL 249855 (Bankr. D.Dist.Col. 2008) (lifting stay to allow divorce

distribution proceedings to go forward in the state court); Robbins v. Robbins, 964 F.2d 342 (4th

Cir. 1992) (granting stay relief in order to allow state court divorce action to continue); In re

Heslar, 16 B.R. 329, 333(Bankr.W.D.Mich. 1981) (holding that "[a] property settlement involves

an inquiry into factors regularly considered by state courts in divorce proceedings, an inquiry

which . . . is best left to the state courts.")).[4]   In saying this, the marital relief sought by

Keresztes, and the nature of the defense raised by the Debtor, are inextricably intertwined with

the prior state court divorce action.    Therefore, this Court will abstain from exercising

jurisdiction over these issues and reserves them for resolution by the Family court.[5]

## V. CONCLUSION

The Court finds sufficient cause to grant Keresztes relief from the Automatic Stay under

11 U.S.C. §§ 362(d)(1).    Keresztes possesses one-half equitable interests in the Debtor's

retirement plans, and said interests are not property of the bankruptcy estate under 11 U.S.C.

§ 541.   Accordingly, the Court finds that the Debtor is charged with an obligation to hold

Keresztes' equitable interests in constructive trust until such time that the Family court

determines whether Keresztes is entitled to relief he seeks, or is barred under the equitable

doctrine of laches.   For these reasons, the Court grants Keresztes' Motion and abstains under 28

U.S.C. 1334(c)(1) with respect to all remaining issues regarding the filing of a QDRO and other

---

[4] The Court makes this ruling based upon the fact that the Family court stands in the best position to determine whether Keresztes slept on his rights by not filing a signed QDRO in a timely fashion, or whether there is evidence of unclean hands on the part of the Debtor in contributing to this delay. See In re Kietur, 332 N.J. Super. 18, 28 (App.Div. 2000) ("Laches has been found where an inexcusable and unexplainable delay in enforcing a known right prejudiced the other party because of such delay." (citing County of Morris v. Fauver, 153 N.J. 80, 105, 707 A.2d 958 (1998))).

[5] "The Younger abstention doctrine applies when there is an ongoing state court proceeding, the state court provides an adequate forum for determining the claims asserted in the federal action, and the proceeding involves important state interests which traditionally look to state law for their resolution or implicate separately articulated state policies." Mayeres v. BAC Home Loans, 2011 Bankr. LEXIS 2793, 12-13 (Bankr. D.N.J. July 21, 2011) (citing Beeler, 2007 U.S. Dist. LEXIS 33434, 2007 WL 1346591 at *3; In re Johnson, 196 Fed. Appx. 112, 2006 WL 2348889 (3d Cir. 2006); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

marital relief sought in the state court. Keresztes is directed to submit a form of order reflecting

the Court's rulings to be held by the Court under the 7 day rule.


Dated: December 29, 2011

Honorable Michael B. Kaplan
United States Bankruptcy Judge